IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| INDEPENDENT CONTRACTORS OF MAVERICK TRANSPORTATION, LLC d/b/a Maverick Transportation LLC Ind Cont. and DORIAN WEST,<br><br>Plaintiffs<br><br>v.<br><br>GREAT WEST CASUALTY COMPANY, a Nebraska Corporation,<br><br>Defendant. | Case No. 24-cv-338 |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS**
**<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Defendant, Great West Casualty Company ("GWCC"), for its Memorandum supporting its Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c), states as follows:

I.    **INTRODUCTION**

GWCC provides insurance coverage protecting the nation's truckers and trucking companies. Its products are generally subject to review by the nation's insurance regulators. Its available forms of coverage run the gamut from first party coverage protecting insureds from the loss of their trucking equipment to commercial auto liability, cargo coverage, non-trucking use coverage, and more. The trucking industry has developed, over the years, into an industry with a substantial space for owner-operators. "Owner-Operators are those individuals that own and operate their

1

own trucking business. ... There are approximately 350,000 owner-operators registered in the United States, most lease on to larger carriers and operate under that carrier's DOT number." *See* https://www.ooida.com/foundation/research/owner-operator-and-professional-employee-driver-facts/. Some 66% of owner-operators have paid off their trucks. *Id*. Thus, more than 100,000 owner-operators are in the process of financing the purchase of their trucks as an investment in their futures.

While the majority of Owner-Operators lease their vehicles with a driver to one motor carrier or another, they may also take jobs that are posted as open to bids. An owner-operator can keep their truck and livelihood if they decide to stop working for any particular company. This path to the economic independence, however, necessitates that they be able to secure affordable insurance coverage for their equipment which protects both themselves and their lenders.

The case before this Court is grounded in Plaintiff West's through a newly created LLC, of which he is the sole member of a solely owned and newly created LLC to disrupt the insurer-insured relationships between GWCC and two decades of insured independent contractors. For the reasons stated herein, GWCC is entitled to judgment on the pleadings.

## II.     STATEMENT OF FACTS

Plaintiff Dorian West ("West") was one of the contractors to Maverick Transportation, LLC. ECF 4, ¶11 and ECF  ¶11 (Plaintiffs alleged that the carrier, Maverick Transportation employs equipment operators, and GWCC admitted that the

2

carrier employs independent contractors, including Dorian West, at some relevant times). See also ECF 4-1, the independent contractor policy, admitted at ECF 7, ¶23.

West entered into a lease agreement with Maverick Leasing, LLC, for lease of a 2020 Freightliner Cascadia Tractor ("the Equipment"). ECF 4 & 7, ¶¶ 10, 12, 22-24, 25. As part of his leasing agreement, West agreed to bear all loss to the Equipment and to procure physical damage insurance for the Equipment. *Id.* at ¶¶ 12, 13. See also **Exhibit 1**, Contractor Agreement ("ICOA"). Specifically, Mr. West asked that Maverick facilitate selected coverages, as follows:

| Physical Damage Insurance on Tractor | | Election |
|---|---|---|
| | | Yes  X |
| Name of Insurer: | Great West Casualty Company | No  __ |
| Policy No: | ICP00136 | |

Ex. 1, Appendix, p. A-10.

The ICP Policy referenced in West's ICOA was in effect for years. See ECF 4-1 at p. 8 of 29, DE 00 01 12 13, reflecting a policy year from May 1, 2022 to May 1, 2023, which is a "Renewal of" the predecessor year's coverage (the "R" policy). The Policy attached to Plaintiffs' Petition is the 19th year of coverage, and is the "S" policy. *Id.*  The "first named insureds" on the ICP Policy were described on the Declarations Page as the "Independent Contractors of Maverick Transportation, LLC". ECF 4 & 7, ¶23. That group of insureds is elsewhere referenced as "Maverick Transportation LLC Ind Cont", ECF 4-1, p. 12 of 29, De 00 12 05 21, p. 1 of 2, and as "Independent Contractors Leased to Maverick." **Exhibit** 2, Certified copy of ECF 4-1, at Certificate of Insurance.

Under the terms of the Policy:

> **This policy provides only those coverages where a charge is shown in the premium column below.** Each of these coverages will apply only to

3

> those 'autos' shown as covered 'autos' for a particular coverage by the entry of one or more of the symbols from the Covered Auto Section of the Physical Damage Coverage Form next to the name of the coverage.

ECF 4-1, DE 00 12 05 21, p. 1 of 2. The symbol shown next to the property damage coverages is "59".

> In turn, symbol "59" means:
>
> 59=   INDEPENDENT CONTRACTOR COMMERCIAL AUTOS.
> Only those trucks, tractors and "trailers" on file with us that are leased by the "motor carrier" shown in the Declarations under this symbol [Maverick Transportation, LLC] and only while under a written lease agreement of 30 days or more. This includes only those 'autos' for which a premium has been paid for the coverages offered by the Policy and only while the lease is in force. If the lease is cancelled or expires then no coverage shall apply.

ECF 4-1, CA 12 03 05 22, p. 1 of 9, with text in brackets from DE 00 12 04 21, p. 2 of 2. Under this language, coverage was plainly extended only to the "autos" of independent contractors working with and for Maverick Transportation.

West's equipment was a 2020 Freightliner tractor. It was leased to Maverick Transportation, LLC, as required for coverage under the ICP Policy. *See* Ex. 1. Plaintiff West specifically alleged that West's equipment was included in the lists on file with the company while he leased his truck to Maverick Transportation, LLC. ECF 4 & 7, ¶¶ 12, 15, 22. *See also* Ex. 1, Appendix, p. A-10. This is confirmed in the Certificate of insurance included in Ex. 2. Mr. West's name, address, relevant premium, and loss payee (Maverick Leasing, LLC) were also included.

On January 31, 2023, West was involved in a motor vehicle accident which caused irreparable damages to the equipment. West submitted a claim under the Policy. ECF 4 & 7, ¶ 25. GWCC honored the claim by paying out $120,000 to cover the property

4

damage loss for which West was responsible.  ECF 4 & 7, ¶¶ 25-27 (and Exhibit B thereto).

Months later, but only two days before filing the instant action, West's counsel created an entity called "Independent Contractors of Maverick Transportation, LLC" ("ICMT LLC").  ECF 7 & 14, Counterclaim ¶ 14. West and ICMT LLC then filed their Petition in Missouri asserting that ICMT LLC is the first named insured on the "S" Policy, which was no longer in effect on February 2, 2024. ECF 4-1,  p. 8 of 29, DE 00 01 12 13.

Plaintiffs admit their counsel, organized ICMT LLC under Missouri law on February 2, 2024. ECF 13, PageID 228 at ¶14; ECF 7 & 14, at ¶14.  Finney also registered "Maverick Transportation, LLC Ind Cont." as a fictitious name for ICMT LLC the same day. *Id.*  Plaintiffs acknowledge that they claim that this after-created entity is the named insureds on the subject Policy. ECF 7 & 14, Counterclaim ¶2 (referencing ECF 4-1, the undisputed Policy). They nonetheless ask this Court to provide them "free and open access" to all insurance policies issued by GWCC to West or ICMT LLC.

### III.  ARGUMENT

**A. Legal Standard for Judgment on the Pleadings.**

Federal Rule of Civil Procedure 12(c) allow a party to move for judgment on the pleadings after the pleadings are closed. FED R. CIV. P. 12(c).  The Court applies the same standard as a Rule 12(b)(6) motion to dismiss. *Nat'l Fire Union Ins. Co. of Pittsburgh v. Cargill, Inc.*, 61 F.4th 615, 619 (8th Cir. 2023).  That is, "the Court accepts as true all factual allegations set out in the complaint" and "construe[s] the complaint in the light most favorable to the non-moving party." *Ashley County v. Pfizer*, 552 F.3d 659, 665 (8th

5

Cir. 2009). Judgment on the pleadings is appropriate when there is "no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Id.*

**B. There is No Difference in Applying Either Missouri or Arkansas Law to Interpretation of the Policy.**

This Court has diversity jurisdiction over this action. ECF 7, ¶¶7-9; ECF 1. In a diversity case, district courts sitting in Missouri apply Missouri choice-of-law rules. *H & R Block Tax Servs. LLC v. Franklin,* 691 F.3d 941, 943 (8th Cir. 2012). The threshold issue in this case is whether ICMT LLC is the first named insureds on some twenty years of coverage that were purchased and sold years before ICMT LLC exited. GWCC anticipates that ICMT LLC will argue that it is the first named insureds and somehow also that the coverage that was issued to others and that has been honored numerous times should be disregarded.

Ultimately the answers to these questions are the same, whether these issues are addressed under substantive Arkansas law (where the Policy was issued and where the independent contractors to Maverick Transportation all do business with Maverick) or Missouri law (where this action sits). See *Bank of the Ozarks, Inc. v. Walker*, 2016 Ark. 116, 2, 487 S.W.3d 808 (Ark. 2016) (The essential elements of a contract in Arkansas are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation); *Precision Invs., L.L.C. v. Cornerstone Propane, L.P.,* 220 S.W.3d 301, 303, 2007 Mo. LEXIS 67, *3 (citing *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 616 (Mo. App. 1995) (same essential elements of a contract in Missouri).

The ICP policies were paid for by the independent contractors whose equipment was insured, as facilitated or arranged under their own independent contractor

agreements. Mr. West's agreement reflects his status as an independent contractor who chose to insure his equipment on the ICP policy. The policy language specifically requires that the insured autos be those of independent contractors leased to Maverick Transportation, ECF 4-1, or Ex. 2 to this motion. ECF 4-1, CA 12 03 05 22, p. 1 of 9, with text in brackets from DE 00 12 04 21, p. 2 of 2. The purpose of such coverage is plain: to protect the independent contractors and their loss payees – not to protect some newly created LLC that does not lease a single truck to Maverick Transportation.

### C. The Court Can Consider the ICOA and Certified Policy Without Converting This Motion to One for Summary Judgment.

On a motion for judgment on the pleadings, matters outside the pleadings generally cannot be considered without converting the motion to one for summary judgment. FED. R. CIV. P. 12(d). However, courts may "consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

West only recently provided GWCC the ICOA; this was after it filed its Answer. The ICOA (Exhibit 1) is integral to the claims at issue, particularly to show that West, in fact, elected for coverage under the Policy and was paid for a claim submitted under the Policy as alleged in his Petition. The ICOA is also implicitly referenced in Plaintiffs' Petition, through Plaintiffs' allegations that West filed and GWCC paid his claim as an

7

independent contractor under the subject independent contractors policy. ECF 4 & 7, ¶¶ 25-27 and ECF 4-2 (Documenting GWCC's Payments). See also ECF 7 at Answers to ¶¶11-14. Thus, the ICOA is referenced in the Petition and integral to the claims at issue and may be considered by this Court without converting this Motion to a summary judgment motion. *Miller*, 688 F.3d at 931 n. 3.

The Court can also consider the certified copy of the Policy attached as Exhibit B. This is the same Policy attached to Plaintiffs' Petition except it is in its certified form. There is no question Exhibit B is an authentic version of the Policy attached to Plaintiffs Petition, thus the Court can consider it in evaluating this Motion. *Id.*

**D. The Policy Is Valid and Enforceable.**

"The interpretation of an insurance policy is a question of law." *Murray-Kaplan v. Nec Ins., Inc.,* 617 S.W.3d 485, 493 (Mo. App. 2021); see also *Scottsdale Ins. Co. v. Morrow Land Valley Co., LLC*, 2012 Ark. 247, 9, 411 S.W.3d 184, 190 (same under Arkansas law). Thus, to be valid and enforceable, the insurance policy must meet the five essential elements of any contract: competent parties, consideration, subject matter, mutual agreement, and mutual obligation. *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 616 (Mo. App. 1995); *Bank of the Ozarks, Inc. v. Walker,* 2016 Ark. 116, 2, 487 S.W.3d 808 (Ark. 2016).

There is no dispute that the Policy meets all five elements. The parties to the contract are GWCC and independent contractors of Maverick, including, at certain times, Plaintiff West. The subject matter is property damage insurance coverage. The parties had mutual agreement, particularly evidenced by West's election under the

8

ICOA to receive coverage under the Policy and GWCC's payment of over $120,000 property damages incurred in the January 31, 2023, accident. And each party had obligations under the Policy – paying premium in exchange for the coverages afforded under the Policy.

Plaintiffs' dispute with GWCC's Policy stems from a complete misunderstanding of the nature of a group insurance policy. That is to say, Plaintiffs' counsel apparently finds it suspect that GWCC issued a policy to a group of independent contractors who worked for Maverick, and even more suspect that Maverick collected funds from drivers to pay premiums to GWCC on behalf of those drivers. There is nothing new or nefarious about the Policy GWCC has issued to Maverick and its contractors for over twenty years. It is similar and just as legal as group life insurance policies and health insurance policies issued to groups of employees at a company. See *Castello v. Gamache,* 593 F.2d 358, 361 (8th Cir. 1979) ("An insured is presumed to have constructive knowledge of the terms of a group policy"). The simple facts of this case are: West elected for coverage under the Policy, West paid his premiums through Maverick (as agreed under the ICOA), West submitted a claim to GWCC for the property damage under the Policy, and GWCC honored its obligations under the Policy by paying the claim.

There is no dispute as to any of these facts or that the Policy is a valid contract. GWCC respectfully requests the Court enter declaratory judgment that the Policy is valid and enforceable.

E.  **ICMT LLC Is Not An Insured Under the Policy.**

West contracted for Maverick Transportation to facilitate his coverage under the Policy or about March 7, 2021. **Ex. 1,** App'x at A-10.  He was involved in an accident resulting in a property damage claim under the Policy that was paid in March 2023. ECF 4-2. Plaintiffs admit their counsel, Daniel Finney, organized ICMT LLC about eleven months later, on February 2, 2024.

That is nearly three years after West contracted for Maverick Transportation, LLC to facilitate coverage under the Policy and almost a year after GWCC paid West's property damage claim from the January 31, 2023 accident.  These facts speak for themselves.  There is no reality in which ICMT could be considered an insured under the Policy for the simple reason that it did not exist at the time the Policy was issued. Thus, Plaintiffs cannot show that ICMT, organized by Plaintiffs' counsel, is a "competent party" capable of contracting. Nor is it reasonable to argue that GWCC mutually agreed to contract with an entity that did not exist when it issued the Policy.  Plaintiffs cannot show that ICMT existed at the time the Policy issued, thus they cannot show any of the five essential elements sufficient to claim ICMT is a party to the Policy.  Accordingly, GWCC requests that the Court find ICMT is not a party to the Policy, and not considered an insured.

F.  **GWCC Honored Its Obligations to West.**

There is no dispute that West submitted a claim for property damage incurred in the January 31, 2023 accident.  Nor is there any dispute that GWCC paid out that claim or that West received the money.  West does not claim that GWCC misvalued the claim

10

or otherwise allege that GWCC failed to fully indemnify West for the damages to equipment. See ECF 7, ¶¶24-26. GWCC thus request that Court declare that it fully honored its obligations to West for the claim related to the January 31, 2023 accident.

## IV.  CONCLUSION

There is no dispute that the Policy at issue is lawful, valid and enforceable. GWCC respectfully requests that the Court grant this Motion for Judgment on the Pleadings, enter judgment in favor of GWCC on the declaratory claims in Counts III and IV of its Counterclaims, and enter an Order providing for the following:

(1) Declaratory relief finding GWCC Policy No. ICP000136S is valid and enforceable;

(2) Declaratory relief finding GWCC has no contractual or other legal relationship with ICMT, LLC;

(3) Declaring Independent Contractors of Maverick, LLC is not a named insured under GWCC Policy No. ICP000136S or predecessor and later policies issued in the same series;

(4) Declaratory relief stating Plaintiffs have no basis or authority to seek to void the coverage afforded to individuals who are or were independent contractors to Maverick Transportation LLC or to seek to recoup premiums paid by those individuals.

(5) Injunctive relief prohibiting Plaintiff Independent Contractors of Maverick, LLC or its counsel from filing suit against GWCC without leave of court;

(6) Declaratory relief stating GWCC is the prevailing party in this action;

(7) An award it its attorney's fees, costs, and expenses incurred in bringing this counterclaim;

(8) All other relief as the Court deems just and proper.

11

Dated:  April 30, 2024                    Respectfully submitted,

                                                               CLYDE & CO US LLP

                                      By:    /s/ Michael J. Roman
                                                 One of Defendant's Attorneys

Danny L. Worker
Michael J. Roman
CLYDE & CO US LLP
30 S. Wacker Dr., Ste. 2600
Chicago, Illinois 60606
Ph: (312) 635-7000
dan.worker@clydeco.us
michael.roman@clydeco.us

**CERTIFICATE OF SERVICE**

The undersigned certifies under penalty of perjury that on April 30, 2024, he caused to be served the foregoing document using the Court's CM/ECF system, which will serve copies of the same upon all counsel of record via email.

/s/ Michael J. Roman