# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| INDEPENDENT CONTRACTORS OF MAVERICK TRANSPORTATION, LLC, d/b/a *Maverick Transportation LLC Ind Cont.*, et al., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 4:24-CV-338 HEA |
| v. | ) ) | |
| GREAT WEST CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on a Show Cause Order, [Docs. 29, 33], and all pending motions. The motions are fully brief and ripe for determination. For the reasons set forth below, Plaintiffs' Petition, [Doc. 4], will be dismissed, Defendant's Motion for Sanctions, [Doc. 53], will be granted in part, Defendant's Motion for Summary Judgment, [Doc. 80], will be granted in part and denied in part, and Defendant's Motion for Protective Order, [Doc. 79] will be denied. Additionally, Plaintiffs' Motion for Leave to File Supplement Response to Show Cause [Doc. 88] will be denied, and Plaintiffs' Motion to Disqualify Counsel, [Doc. 46], will be denied. All other pending motions will be denied as moot.

## I.  Factual And Procedural Background

Plaintiff Dorian West worked as an independent contractor for Maverick Transportation, LLC and leased a tractor-trailer from Maverick Leasing, LLC. [Docs. 4 & 7 ¶¶ 9, 10, 21, 22; 21-1].  The lease agreement required Plaintiff West to insure the leased equipment.  [Doc. 21-1 at 3].  Maverick Transportation facilitated a policy of insurance to cover the leased equipment through Great West Casualty Company ("Defendant" or "GWCC").  [*Id.* at 29-30].  Maverick Transportation deducted premiums for the insurance policy from Plaintiff West's compensation.  [Docs. 4 & 7 ¶ 14; 21-1 at 29].  GWCC Commercial Lines Policy number ICP00136S ("GWCC policy") referred to the named insureds as "Independent Contractors of Maverick Transportation LLC," and "Maverick Transportation LLC Ind Cont."  [Doc. 4-1 at 5, 6, 8, 12, 14, 15, 25, 26].

On January 29, 2023, Plaintiff West was involved in a motor vehicle crash while driving the leased tractor-trailer and suffered significant bodily injuries. He filed a property damage claim for the leased tractor-trailer under the GWCC policy covering the period of May 1, 2022, to May 1, 2023.  [Docs. 4, 4-1, 4-2, 35 at 8-9]. GWCC tendered two payments on the claim:  $108,150.00 to "Dorian West and Maverick Leasing, LLC" and $12,830.75 to "Maverick Transportation LLC Ind. Cont."  [Docs. 4, 4-2].

On February 2, 2024, Plaintiffs' counsel, Daniel Finney, III, organized the entity "Independent Contractors of Maverick Transportation, LLC" under Missouri

law with the Missouri Secretary of State.[1]  [Docs. 1-2 at 1-6; 13 & 14 ¶¶ 2, 4 (admitting Doc. 7 at 10 ¶¶ 2, 4)].  Mr. Finney is the organizer and registered agent for the LLC, and according to Plaintiffs' disclosures, Dorian West is its only member.  [Doc. 11].  On the same day, "Maverick Transportation LLC Ind Cont" was registered as a fictitious name, with "Independent Contractors of Maverick Transportation, LLC – Daniel Finney" listed as the owner.  [Docs. 1-2 at 1-6; 13 & 14 ¶¶ 2, 4 (admitting Doc. 7 at 10 ¶¶ 2, 4)].

On February 4, 2024, Plaintiffs filed a Petition for Declaratory Judgment in the Associate Circuit Court for the 21st Judicial Circuit, Missouri, which GWCC removed to this Court on March 5, 2024, on the basis of federal diversity jurisdiction.  [Docs. 1, 4].  In their Petition, Plaintiffs allege that Independent Contractors of Maverick Transportation, LLC and/or Maverick Transportation LLC Ind. Cont. (i.e., the two names of the "Plaintiff LLC") are the first named insureds under the GWCC policy, and that Plaintiff West was also insured under the GWCC policy.  [Doc. 4 ¶¶ 23-24].[2]  Plaintiff LLC asks the Court to "declare free and open access to policies identifying Independent Contractors of MT, LLC

---

[1] The Court may take judicial notice of public records.  *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (upholding district court taking judicial notice of financing statements filed with the Minnesota Secretary of State).

[2] In response to Defendant's Answer and Counterclaims, Plaintiffs deny having alleged that Plaintiff LLC is a named insured under the policy, suggesting that this allegation did *not* intend to refer to Plaintiff LLC.  *See* [Doc. 13 at 4 (denying [Doc. 7 at 17 ¶ 46])].

and/or Maverick Transportation Ind Cont. named insureds, schedules of operators and equipment these policies reference, and files of claims submitted under said policies." [Doc. 4 at 3-4]. Similarly, Plaintiff West asks the Court to "declare free and open access to policies identifying Dorian West in schedules attached to these policies, including policy # ICP00136S, and all files related to claims he submitted pursuant to said policies, including File # S31925-M U01." [*Id.* at 4].

GWCC filed an Answer and Counterclaims for abuse of process and declaratory judgment. [Doc. 7]. GWCC alleges that Plaintiff LLC is not a named insured under the GWCC policy. [*Id.*] Further, it alleges that Plaintiff West was covered under the GWCC policy as part of a group of independent truck operators of Maverick Transportation at the time of the motor vehicle crash, and it satisfied its obligations under the policy on his property damage claim. [*Id.*] GWCC seeks damages for alleged abuse of process by Plaintiff LLC (Counterclaim I) and Plaintiff West (Counterclaim II). [*Id.*] Additionally, GWCC seeks a declaration under 28 U.S.C. §§ 2201 and 2202 that Plaintiff LLC is not a named insured and has no rights under the GWCC policy (Counterclaim III), and that it has satisfied its obligations to Plaintiff West for the property damage claim (Counterclaim IV). [*Id.*]

On April 30, 2024, GWCC filed a motion for judgment on the pleadings as to Counts III and IV of its counterclaim.  [Doc. 20].  GWCC requests, among other things, that the Court declare the GWCC policy valid a45 pages

nd enforceable, but that GWCC has not contractual or other legal relationship with Plaintiff LLC.  GWCC further requests the Court to declare that Plaintiffs have no basis or authority to seek to void the coverage afforded to individuals who are or were independent contractors to Maverick Transportation LLC or to seek to recoup premiums paid by those individuals.  Plaintiffs oppose Defendant's Motion for Judgment on the Pleadings.

On June 4, 2024, the Honorable Sarah E. Pitlyk[3] held a Rule 16 conference in this case, at which she expressed concerns that Plaintiffs' lawsuit had been brought for an improper purpose and was not warranted by existing law.  [Doc. 35 at 48-49].  Judge Pitlyk's concerns were based on the allegations in the parties' pleadings, statements made by counsel during the conference, e-mail exchanges attached to Defendant's Answer and Counterclaims, the creation of Plaintiff LLC two days before the filing of this lawsuit, and judgment issued in a trademark

---

[3]On March 3, 2025, Judge Pitlyk issued an Order recusing herself, [Doc. 95], and the case was reassigned to the undersigned, [Doc. 96].

infringement case against Plaintiff LLC.[4]  [*Id.*]  During the conference, Judge

Pitlyk ordered Plaintiffs to show cause:

> [W]hy the suit was not filed for an improper purpose and how the
> legal basis for the claims related to [Plaintiff LLC] specifically are
> warranted by existing law or by a nonfrivolous argument for
> extending, modifying, or reversing existing law or for establishing
> new law.

[*Id.* at 49-50].  Further, Judge Pitlyk ordered Plaintiffs to explain why this lawsuit

should not be dismissed with prejudice.  She alerted counsel that she would

consider requiring Plaintiffs to pay all or part of Defendant's reasonable attorneys'

fees and other expenses.  [*Id.* at 50].  Judge Pitlyk then issued a written Show

Cause Order stating the same and requiring a response no later than June 18, 2024.

[Doc. 29].

On June 6, 2024, Plaintiffs filed a memorandum summarily stating that

"Plaintiffs show cause they did not violate Fed. R. Civ. P. 11 through the signature

on their pleadings."  [Doc. 32].  Plaintiffs, however, did not respond to the

questions in the Show Cause Order.  Instead, they stated:

> Perhaps the Court should show cause as to why she threatened to
> order a permanently unemployed and crippled truck driver pay the

---

[4]Plaintiff LLC's use of the Maverick trademark has been adjudicated as a trademark
rights violation in the United States District Court for the Easter District of Arkansas,
Central Division.  *See Maverick USA, Inc. v. Independent Contractors of Maverick
Transportation LLC d/b/a Maverick Transportation LLC Ind Cont*, Case No. 4:24-cv-
00115, [Doc. 22], (E.D. Ark. May 23, 2024). Maverick was awarded statutory damages
of Two Million dollars ($2,000,000.00), and Plaintiff LLC was enjoined from further use
of the Maverick trademark.  *Id.* [Doc. 22 at 4-5].

> attorneys' fees of the insurance company who took his premiums, because he filed a petition requesting the Court declare he is entitled to free and open access to a certified copy of a policy with his name on it, and the claims file relating to his injuries, consistent with Missouri law, before the Court read and understood Fed. R. Civ. P. 11.

[*Id.* at 2]. In their response, Plaintiffs pointed out that Rule 11 does not authorize a court to award attorneys' fees as a sanction on its own motion, [*id.* at 1], to which Judge Pitlyk promptly ordered:

> On June 6, 2024, Plaintiffs filed a response to the Court's June 4, 2024, Show Cause Order, pointing out that Federal Rule of Civil Procedure 11 does not authorize the Court to award attorneys' fees as a sanction on its own motion. Plaintiffs are correct. *See Schlafly v. Eagle F.*, 970 F.3d 924, 938 (8th Cir. 2020) ("[T]he district court does not have authority under Rule 11 to award attorney's fees on its own motion."). Rather, the Court may award attorneys' fees "under its inherent power as a sanction against [a party] for acting in bad faith." *Id.* And 28 U.S.C. § 1927 gives the Court the power to require an "attorney or other person" who "multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See Caranchini v. Nationstar Mortg., LLC*, 97 F.4th 1099, 1103 (8th Cir. 2024).

[Doc. 33]. Plaintiffs were given seven days to file a supplemental response. [*Id.*]

One day later, Plaintiffs filed a second memorandum, stating:

> This honorable Court has the inherent power to sanction anyone arguing the feigning of stupidity enough to maintain before this Court that ICP#00136 is an enforceable contract, is any better than being that stupid. But undersigned counsel will face a firing squad before he pays any attorneys' fees, or other monetary sanctions in this case. So the Court will have to sanction him with prison time, which is also well within this Court's inherent powers.

7

> In respectfully rectitude, undersigned counsel states that it is not within the Court's inherent power to disregard legislative intent so to sanction a crippled penniless truck driver for filing a declaratory judgment action seeking free and open access to an insurance policy with his name on it, along with a copy of the claims file related to his injuries, from the insurance company that took his premiums.  And in so doing, this honorable Court would abuse discretion.

[Doc. 34].

On June 11, 2024, Plaintiffs filed a third memorandum suggesting that Mr. Finney be allowed to serve thirty (30) days in a federal penitentiary by way of a response to the Show Cause Order.  [Doc. 38].  The following day, Mr. Finney filed a motion seeking to apologize to the Court conceding that his responses to the Show Cause Order "display[ed] [a] lack of integrity and fidelity to the oath which he claims to espouse" and a lack of respect.  [Docs. 40, 41].  This motion remains pending.

On June 13, 2024, Plaintiffs filed a fourth memorandum, this time asserting that they would not respond to the Show Cause Order unless Defendant dismissed its abuse of process claims against Plaintiffs with prejudice.  [Doc. 43].  Mr. Finney argued that the Show Cause Order required him to violate his oath to defend the constitutional rights of his clients.  [*Id.*]

On June 15, 2024, Plaintiffs filed two motions.  One sought the disqualification of Judge Pitlyk, [Doc. 44], which was later withdrawn. [Doc. 61].

The other sought the disqualification of Defendant's counsel.  [Doc. 46].  The motion to disqualify counsel remains pending.

On July 3, 2024, Defendant filed a motion seeking sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority.  [Doc. 53].  In its Motion, Defendant states the following:

> Mr. Finney's conduct [in multiple lawsuits brought on behalf of West], and his extreme and outrageous demands in [the] context of these suits demonstrate the improper purpose to harass [and] cause unnecessary costs and inconvenience of litigation that is unwarranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law.  His actions further demonstrate a blatant disregard for the facts known to him and to his clients.

[*Id.* ¶¶ 10, 11].  GWCC requested sanctions including dismissal of Plaintiffs' Petition and payment of GWCC's legal fees and costs in responding to this and other lawsuits filed by Plaintiff West.  [*Id.*]

Defendant attached to its motion copies of e-mails received from Mr. Finney along with documents from the other lawsuits.  In e-mails to Defendant's counsel, Mr. Finney claims Plaintiff LLC is entitled to tens of millions of dollars in damages and demands that all insurance policies listing "Independent Contractors of Maverick Transportation LLC d/b/a Maverick Transportation LLC Ind Cont" be cancelled immediately and the premiums be refunded to Plaintiff LLC.  [Docs. 53 at 5-6; 7-2, 7-3, 7-4].  In one such e-mail that was sent on February 5, 2024, three

days after Plaintiff LLC was registered with the Missouri Secretary of State and a

day after the state court Petition was filed in this case, Mr. Finney wrote:

> So-my client is hereby providing Great West Casualty notice of
> cancellation of all the policies with the first named insured
> "Independent Contractors of Maverick Transportation, LLC" or
> "Maverick Transportation Ind Cont."
> My client demands a refund of premiums, pursuant to pursuant to
> paragraph G on the last page of the policy ICP00136S, directly above
> your client's signature.
> …
>
> Please make the refund check payable to the first named insured in the
> declarations:
>
> Independent Contractors of Maverick Transportation, LLC d/b/a
> Maverick Transportation Ind Cont.
>
> If a refund check is not received at that address within sixty days from
> the date of this e-mail, then my client, Independent Contractors of
> Maverick Transportation, LLC d/b/a Maverick Transportation Ind
> Cont. will sue your client for conversion of premiums.

[Doc. 7-3].  The following day, on February 6, 2024, Mr. Finney sent another e-

mail to GWCC's counsel stating:

> Please see the attached. GWCC is issuing the policy, checks, and
> paying proceeds like the named insureds "Independent Contractors of
> Maverick Transportation, LLC" and "Maverick LLC Ind Cont." are
> real entities, capable of negotiating contracts and checks.
>
> So your client is compelled to do one or more of the following:
>
> 1. Admit the named insured in the declarations of ICP00136, and
> payee on check #5706487 did not exist outside the policy and the
> check itself at the time both were issued, meaning GWCC issued the
> policy with the intent no one legal recourse to cancel the policy, and

10

receive a partial or full refund of the at least $267K premiums GWCC collected for the policy, proving the policy both fraudulent and illegal.

2. Abide by the terms of the policy with the named insured in the declarations: Independent Contractors of Maverick Transportation, LLC d/b/a Maverick Transportation LLC Ind Cont., which is my client, by canceling the policy and issuing a refund check, to the updated address, naming as payee the named insured in the policy.

Because after an exhaustive search, I haven't found any evidence that the named insureds in policy #ICP00136S exist, other than the company for which I am legal counsel and registered agent.

Either way, GWCC will have converted premiums of the equipment operators on the lists.

The analysis above is bullet proof. It is in your client's best interest to meet my client's demand for $65 million in exchange for a global release, as soon as possible.

[Doc. 7-4].

According to Defendant, Mr. Finney continued to send a barrage of e-mails, sometimes more than seven per day, demanding as much as $500 million from GWCC and threatening to put GWCC and its parent corporation out of business and its counsel in jail.  [Doc. 53 ¶ 13(f), 53-2 at 20, 25-26, 28, 53-4 at 5-16, 21-53].

Notably, in an e-mail dated March 7, 2024, Mr. Finney admitted he created Plaintiff LLC for the purpose of obtaining standing to bring a claim under the policy against GWCC as well as to bring a UCC claim against a bank.  [Doc. 53-4 at 5].  Specifically, he wrote:

I need to subpoena GWCC to testify check #5706487 was intended for Dorian. Also, I may need to subpoena a list of all the operators

11

who were insured under any policy naming "Maverick Transportation LLC Ind Cont." and/or "Independent Contractors of Maverick Transportation, LLC". And any witnesses who may have evidence that Maverick was aware this was going on.

…

We've no interest in using those names in commerce, at least not right now. We just need standing to pursue a claim under the UCC against First Horizon for cashing a check made payable to "Maverick Transportation LLC Ind Cont." But we cannot do it without registering an LLC.

…

Also, I need it to get standing to bring a claim under the policy against GWCC. The policy doesn't reference anyone but that named insured. Everyone agrees that, at least in this case, that name means Dorian. But to get standing under that name, he needs to register an LLC.

[*Id.*]

Despite the serious allegations in Defendant's motion for sanctions, Mr. Finney failed to make a substantive response on behalf of Plaintiffs.  In Plaintiffs' response memorandum he wrote the following:

[U]ndersigned counsel will not, cannot, comply with an order to show cause, nor respond in substance to motion(s), requiring him to disprove allegations against his clients in a civil claim, no matter what the Court articulates about the disputed allegations against his clients before trial, nor the consequences to him personally. Rather, undersigned counsel insists the Court presume Plaintiffs did not file frivolous claims for an improper purpose, until the party pleading those allegations against his clients meet its burden as to every element of the allegations, after that party deposed under oath, answer interrogatories, produce for examination all documents and physical evidence reasonably calculated to lead to the discovery of admissible evidence, and subject to cross-examination at trial.

[Doc. 55 at 2].  Mr. Finney did offer to "comply with the show cause order entered in this case, and respond in substance in opposition to GWCC's motion for sanctions, upon dismissal of GWCC's counterclaims with prejudice."  [*Id.* at 2-3].

On August 23, 2024, after the Defendant's Motion for Sanctions was fully briefed, GWCC filed a Motion to Stay All Discovery and for a Protective Order pursuant to Federal Rule of Civil Procedure 26, [Doc. 57], which Judge Pitlyk granted on August 27, 2024, [Doc. 60].

On January 15, 2025, GWCC filed a Motion for Summary Judgment as to all claims and counterclaims in this suit.  [Doc. 80].  In response to the motion, Plaintiffs filed a one-paragraph Memorandum in Opposition.  [Doc. 87].  Other pending motions filed by the parties include the following: Defendant's Motion to Modify Case Management Order, [Doc. 63], Plaintiffs' Motion to Lift Discovery Stay, [Doc. 76], Defendant's Motion for Protective Order, [Doc. 78], Plaintiffs' Motion for Leave to Supplement Response to Show Cause, [Doc. 88], and Defendant's Motion for a Hearing on its motion for a protective order, [Doc. 104].

The Court will first take up Judge Pitlyk's Show Cause Orders and Plaintiffs' Responses, as well as Defendant's Motion for Sanctions.  The Court will then turn to Defendant's Motion for Summary Judgment and the other pending motions.

## II.    <u>Show Cause Order and Motion for Sanctions</u>

Believing there was evidence that this suit was filed without proper legal foundation and/or for an unlawful purpose, Judge Pitlyk ordered Plaintiffs to show cause (1) why this suit was not filed for an improper purpose; and (2) how the legal basis for the claims related to Independent Contractors of Maverick Transportation, LLC, are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.  Plaintiffs were warned that failure to comply could result in dismissal with prejudice and/or an award of attorneys' fees.  [Docs. 29 &33].

In its Motion for Sanctions, Defendant argues that this suit is unwarranted by existing law or, alternatively, that there is no nonfrivolous argument for extending, modifying or reversing existing law to support this suit.  Defendant contends that Mr. Finney filed the above captioned litigation with the improper purpose to harass, cause unnecessary costs and the inconvenience of litigation to GWCC. Defendant points to the fact that Plaintiff West is no longer an independent contractor for Maverick Transportation, and Mr. Finney created Plaintiff LLC only a few days before filing suit.  And despite being aware that the Plaintiff LLC is not and never was a party to GWCC's policies, Mr. Finney filed the present suit against GWCC, and he has demanded a return of all premiums and cancellation of policies for independent contractors of Maverick Transportation LLC, including

14

for active truck drivers.   Defendant accuses Mr. Finney of using a confusing name that violates the Maverick trademark with no legitimate business purpose.  For relief, GWCC asks that the Court dismiss Plaintiffs' claims with prejudice and enter Rule 11 sanctions against Mr. Finney in the amount of GWCC's legal fees and costs.

## A.  Legal Standards

A district court has broad discretion in the choice of sanctions.  *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 747 (8th Cir. 2018).  "The Supreme Court's 'prior cases have indicated that the inherent power of a court [to impose sanctions] can be invoked even if procedural rules exist which sanction the same conduct.'"  *Schlafly v. Eagle F.*, 970 F.3d 924, 936 (8th Cir. 2020) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991)).  A federal court may sanction bad faith conduct by means of its inherent powers even if that conduct could also be sanctioned under the federal rules.  *Id.*  That is particularly true where the federal court determines the federal rules are not up to the task.  *Id.*

### 1.  Federal Rule of Civil Procedure 41(b)

Under Rule 41(b), a district court may dismiss an action "for a plaintiff's failure to prosecute, or to comply with the Federal Rules of Civil Procedure or any court order."  *Henderson v. Renaissance Grand Hotel*, 267 F. App'x 496, 497 (8th Cir. 2008).  "[U]nless otherwise specified, such dismissal operates as an

15

adjudication on the merits." *Rodgers v. Curators of Univ. of Missouri*, 135 F.3d 1216 (8th Cir. 1998). "A court may so dismiss on its own initiative." *Brown v. Frey*, 806 F.2d 801, 803 (8th Cir. 1986). "The district court's exercise of this power is within the permissible range of its discretion if there has been a clear record of delay or contumacious conduct by the plaintiff." *Id.* (cleaned up).

### 2. Federal Rule of Civil Procedure 11

"[T]he central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). To that end, Rule 11 requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's individual name—or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). "By signing, filing, submitting, or later advocating it--an attorney . . . certifies that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:"

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Rule 11 "operates in part on the assumption that an attorney [will] conduct a reasonable inquiry of the factual and legal basis for a claim before filing." *Vallejo*, 903 F.3d at 747. A "reasonable inquiry" is one that uncovers both factual and legal bases for the plaintiff's claims. *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003). In determining whether an attorney has violated this requirement, a court considers "whether a reasonable and competent attorney would believe in the merit" of the claim(s). *Id.* "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). Rule 11 permits an opposing party to move for sanctions, or, "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).

"Rule 11 embraces the idea that on occasion attorneys engage in litigation tactics that are unjustifiable within the broad bounds of our adversarial system, and that our system does not tolerate such tactics." *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 626–27 (8th Cir. 2003). "Sanctions under Rule 11 are not limited to

instances in which a pleading as a whole is frivolous, but may be imposed for improper allegations even though at least one non-frivolous claim has been pled . . . ." *Franklin v. Pinnacle Ent., Inc.*, 289 F.R.D. 278, 289, n.11 (E.D. Mo. 2012), *modified in part*, No. 4:12-CV-307 CAS, 2013 WL 11235897 (E.D. Mo. Jan. 28, 2013). "Part of the purpose of the sanctioning power . . . is to control litigation and to preserve the integrity of the judicial process." *Vallejo*, 903 F.3d at 747.

A sanction under Rule 11 "may include nonmonetary directives; an order to pay a penalty into court; or if, imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). Other possible sanctions include: "striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities (or, in the case of government attorneys, to the Attorney General, Inspector General, or agency head), etc." Fed. R. Civ. P. 11(c) Advisory Committee's Note to 1993 amendment. "In the context of Rule 11, appellate courts have forcefully suggested that trial courts consider which sanction constitutes the least severe sanction that will adequately deter the undesirable conduct." *Vallejo*, 903 F.3d at 747 (cleaned up).

### 3.  Statutory Sanction

"Congress mandates that '[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'" *Vallejo*, 903 F.3d at 749 (quoting 28 U.S.C. § 1927).  "Sanctions under § 1927 may be imposed irrespective of 'winners and losers, or between plaintiffs and defendants.  The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law.  It is concerned only with limiting the abuse of court processes.'" *Id.*

### 4.  Inherent Power

Finally, "[f]ederal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (cleaned up).  A court's inherent powers include the imposition of sanctions when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975).  "The court's powers include the ability to supervise and discipline attorneys who appear before it and discretion to fashion an appropriate sanction for conduct which abuses the judicial process, including assessing attorney fees or dismissing the case." *Vallejo*, 903 F.3d at 749 (cleaned

19

up).  "Attorneys are entitled to advocate zealously for their clients, but they must do so in accordance with the law, the court rules, and the orders of the court."  *Id.* at 750.  Permissible sanctions include assessment of attorney's fees to reimburse legal fees and costs incurred by the other side.  "[I]n determining whether to award attorney fees based on the litigant's bad faith, the court may consider conduct both during and prior to the litigation . . . ."  *Schlafly*, 970 F.3d at 937.

**B.  Discussion**

Plaintiffs failed to comply with Judge Pitlyk's written Orders dated June 4, 2024 and June 6, 2024, and her order issued from the bench verbally at the Rule 16 conference on June 4, 2024.   Questioned by the Court on both the verbal record, *see* [Doc. 35 at 49-62], and in the written Show Cause Orders, [Docs. 29, 33], Mr. Finney had ample opportunity to save his clients' case from dismissal and to protect himself from sanctions by providing a colorable legal basis for Plaintiffs' claims and/or by abandoning claims that lacked such a basis. *See* [Doc. 35 at 58-59] (encouraging Mr. Finney to "make it very clear, the scope of what it is you are seeking and why it is a nonfrivolous legal argument . . . and to divest yourself or distance yourself from any arguments that are plainly frivolous . . ."). Instead, Mr. Finney elected to file four memoranda that were nonresponsive, irreverent and

insulting.[5]  Those four filings alone comprise a "clear record of . . . contumacious conduct," warranting dismissal of the Petition.  *Brown*, 806 F.2d at 803.  The Court finds Plaintiffs failed to comply with the Court's orders in that they have failed to address the substance of the show cause orders.  It is clear from the record that Plaintiffs have no intention of ever complying with the show cause orders. Even when given explicit warnings that they may be subject to sanctions, Plaintiffs have proven that they are unwilling to follow rules or the Court's instructions.  The Court has carefully considered the available alternatives and finds dismissal with prejudice is appropriate in this case.  *Lindstedt v. City of Granby*, 238 F.3d 933, 937 (8th Cir. 2000).  The Court dismisses Plaintiffs' Petition under Fed. R. Civ. P. 41(b).

The Court now turns to Mr. Finney's conduct.  Despite being clearly instructed to do so, Mr. Finney has failed to provide any credible basis for making claims against GWCC on behalf of a brand-new LLC of his own creation, and the Court cannot fathom any response that would justify the claim that an entity created on February 2, 2024 has any rights under the GWCC policy covering the

---

[5]*See, e.g.* Doc. 32 at 2 ("[P]erhaps the Court should show cause as to why she is not friends with undersigned counsel, when everyone knows he is a blast to hang out with.); Doc. 34 at 1 ("But undersigned counsel will face a firing squad before he pays any attorneys' fees, or other monetary sanctions in this case.");

period of May 1, 2022 to May 1, 2023.[6]  The Petition's allegations and prayer for relief on behalf of Plaintiff LLC are devoid of a colorable legal basis and Mr. Finney's pursuit of a manifestly meritless claim violates Rule 11.  *See* Fed. R. Civ. P. 11(b)(2), (3).  Moreover, notwithstanding the Court's admonitions and multiple filings by Defendant pointing out his misconduct, *see* [Docs. 20, 21, 23, 48, 53, 56, 58, 68, 78, 79, 86], Mr. Finney has not dismissed his claim on behalf of Plaintiff LLC, but instead insists on pursuing a blatantly frivolous claim.  *See Doc*. 83 ¶¶ 7, 8, 13 (arguing that "Plaintiff Independent Contractors of Maverick Transportation, LLC is *literally* word for word, letter for letter, punctuation for punctation, the clear and unambiguous named insured Defendant declares as the first named insured pursuant to the terms in ICP00136").

The Court also finds that Mr. Finney brought this lawsuit for an improper purpose.  During the Rule 16 conference, Mr. Finney discussed a number of theories of liability that are not even arguably raised in this lawsuit, stating that "the dec action is going to inform a lot as to whether or not we move forward with anything."  [Doc. 35 at 39].  That description, together with the evidence of the newly formed LLC, related lawsuits, harassment, and outlandish demands and

---

[6]In refusing to respond to the Show Cause Order, Mr. Finney also provided no defense of his use of the Maverick mark in this lawsuit, despite the judgment in Maverick USA, Inc. v. Independent Contractors of Maverick Transportation LLC d/b/a Maverick Transportation LLC Ind Cont, Case No. 4:24-cv-00115, [Doc. 22], (E.D. Ark. May 23, 2024).  His claim in the Rule 16 conference that this lawsuit does not run afoul of that Court's injunction remains wholly unsupported.

statements establishes to the Court's satisfactions that this lawsuit is something other than a good faith effort to vindicate a discrete, legitimate legal claim.[7]  The Show Cause Orders invited Mr. Finney to respond to the Court's concerns that this suit was brought for an improper purpose, but Mr. Finney failed to properly respond and instead, he forged ahead with this suit filing documents with the Court that made outrageous statements and claims.[8]  By his own admission, his filings with this Court have suffered from a lack of propriety and professionalism.  *See* [Doc. 41].

---

[7] *See, e.g.,* Doc. 89 at 5 ("As to the filing of articles of organization in the name of the insured decades after the terms of coverage were underwritten, … undersigned counsel respectively reminds the honorable Court Solomon ordered the execution of an infant only to deceive the poor mother into believing her child had been sentenced to death. Any parent who has ever been told of the certainty of a child's death before the parent's death will testify that deception cruel and inhumane, but for the favored ruler's purpose of reuniting child and mother.").

[8] *See, e.g*., Doc. 89 at 2, 4 and 6 ("Defense counsel takes leave of senses by demanding hundreds of thousands of dollars in the fees his law firms charged Defendant to perpetrate perhaps the most obvious and criminal fraud upon the Court in the history of American jurisprudence, so incredible that a defense of not guilty by reason of insanity may be his best bet when charges brought."; "The indentured servitude that left Dorian West and hundreds of thousands of other truck drivers, their spouses and children, impoverished and stripped of basic human rights could not happen if not for the collusion, tax fraud, money-laundering and racketeering of Defendant and other insurers."; "Respectfully, those in positions of power cannot observe nor ignore insurance companies such as [GWCC] …  and others engage in theft of tens if not hundreds of billions of dollars over decades from hundreds of thousands of Americans and their families as rent, maintenance and 'premiums' for voided terms of coverage intended to subjugate American citizens in the perhaps the worst and most wide-ranging violation of human rights under labor laws since the end of Jim Crowe; and to perpetuate the largest and most wide-ranging embezzlement, tax fraud and money-laundering racket in U.S. history, decimating the middle class, hampering interstate commerce, and poisoning the life stream of the Republic.").

Mr. Finney also continued to make unreasonable demands on GWCC that were not based sound legal theories.  Mr. Finney's e-mails to GWCC's counsel reflect that he has devoted a sizable number of hours waging a campaign to compel a multimillion-dollar payment from Maverick Transportation, Maverick Leasing, GWCC, and GWCC's parent company, Old Republic. [9]  In his written correspondence to GWCC's counsel, he has been unprofessional, disrespectful, erratic, and harassing, and he has threatened to pursue criminal action.[10]

Based on the foregoing, the Court finds as follows:

(1) Plaintiffs' failure to comply with the Court's Show Cause Order violates Federal Rule of Civil Procedure 41(b).

(2) No reasonable and competent attorney would believe in the merit of Plaintiff LLC's claim.

(3) Mr. Finney's persistence in litigating Plaintiff LLC's frivolous claim violates Rule 11(b)(2).

(4) Mr. Finney has pursued this lawsuit in bad faith and for an improper purpose, violating Rule 11(b)(1).

(5) Mr. Finney has exhibited disrespect and a lack of integrity in filings with the Court and his filings comprise a clear record of contumacious conduct.

(6) The pursuit of this meritless lawsuit has caused Defendant to incur significant attorneys' fees and costs.

---

[9] In a recent filing, Mr. Finney claims to have spent "well over 4,000 hours on this case."  [Doc. 90 at 5 n.1].

[10] *See, e.g.,* Doc. 53-4 at 42 ("If you kill me, it's problematic because federal law enforcement is monitoring our conversations. And if you pay me, that is also problematic because I am not taking less than $500 million to make this go away.").

(7) Mr. Finney has multiplied the proceedings in this case unreasonably and vexatiously.

For these reasons, the Court dismisses Plaintiffs' Petition with prejudice under Rule 41(b). The Court further grants Defendant's Motion for Sanctions, [Doc. 53], and finds Mr. Finney is subject to sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent power. In its motion, GWCC requests its legal fees and costs as well as dismissal of Plaintiffs' Petition, however, it failed to support its request for fees and costs with evidentiary support. The Court will issue a separate order setting a hearing to determine the appropriate sanction(s) under Rule 11, 28 U.S.C. § 1927, and the Court's inherent power.

### III.    Motion for Judgment on the Pleadings and Motion for Summary Judgment

GWCC filed abuse of process counterclaims against Plaintiff LLC (Counterclaim I) and Plaintiff West (Counterclaim II). [Doc. 7]. Additionally, GWCC seeks a declaration under 28 U.S.C. § 2201 and § 2202 that Plaintiff LLC is not a named insured and has no rights under the GWCC policy (Counterclaim III) and that it has satisfied its obligations to Plaintiff West for his property damage claim (Counterclaim IV). GWCC filed a Motion for Judgment on the Pleadings as to Counterclaims III and IV, [Doc. 20], and a Motion for Summary Judgment on Plaintiffs' Petition and Counterclaims I-IV, [Doc. 80]. Plaintiffs filed responses to both motions, [Docs. 22, 87].

25

Because the Motion for Judgment on the Pleadings is incorporated by reference into the Motion for Summary Judgment, [Doc. 81 at 4-5], and the two seek the same relief,  it is only necessary to rule on the Motion for Summary Judgment.  *See, e.g., Argonaut Great Cent. Ins. Co. v. Lincoln Cnty., Missouri*, No. 4:17-CV-00762 JAR, 2018 WL 3756767 (E.D. Mo. Aug. 8, 2018), *aff'd,* 952 F.3d 992 (8th Cir. 2020). The Motion for Judgment on the Pleadings will be denied as moot.  Additionally, because the Court has dismissed Plaintiffs' Petition herein, the Motion for Summary Judgment will be denied as moot as to Plaintiffs' claims against GWCC.  *See SL EC, LLC v. Ashley Energy, LLC,* 561 F. Supp. 3d 802, 810 n.4 (E.D. Mo. 2021).

**A. Legal Standard**

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

26

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (citation omitted). The nonmoving party asserting a factual dispute "must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot product admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). If the nonmoving party fails to address the moving party's assertion of fact as required by Rule 56(c), the court may (1) "consider the fact undisputed for purposes of the motion;" or (2) "grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2).

Additionally, Local Rule 4.01 requires:

Every memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts, which must be separately filed using the filing event "Response to Statement of Material Facts." The Response must set forth each relevant fact as to which the party contends a genuine issue exists. The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts. All matters set forth in the moving party's Statement of Uncontroverted

27

Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D.Mo. L.R. 4.01

## B. Statement of Undisputed Facts

In support of its motion for summary judgment, GWCC submitted a statement of uncontroverted material facts. Plaintiffs did not respond to the statement of uncontroverted facts or provide the Court with a statement of material facts as to which they contend a genuine dispute exists. In fact, Plaintiffs responded to the Motion for Summary Judgment with the following single statement:

> Defendant's arguments in this pending action that the combination of letters declared the "first named insured" in ICP00136 not the name of any individual nor entity is a confession to theft of the premiums collected to underwrite coverage pursuant to the terms stated in that policy.

[Doc. 87]. Based on Plaintiffs' failure to respond to GWCC's Statement of Material Facts, the Court will consider the facts as undisputed under Rule 56 and Local Rule 4.01 to the extent the facts are properly supported by the record. *Deichmann v. Boeing Co*., 36 F. Supp.2d 1166, 1168 (E.D. Mo. 1999), *aff'd,* 232 F.3d 907 (8th Cir. 2000). *Cf. Nw. Bank & Tr. Co. v. First Illinois Nat'l. Bank*, 354 F.3d 721, 725 (8th Cir. 2003) (holding that the district court did not abuse its discretion by applying local rules that excluded some of the material facts offered in opposition to a motion for summary judgment).

Plaintiff West was an independent contractor of Maverick Transportation, LLC.  [Docs 21-1, 82 ¶ 1]. Plaintiff West's arrangement with Maverick Transportation required that he provide a truck and a driver to Maverick Transportation.  [Docs. 21-1 at 3, 82 ¶ 1].  Plaintiff West leased a 2020 Freightliner Cascadia Tractor ("the Tractor-trailer") from Maverick Leasing, LLC.  [Docs. 7 ¶¶ 10, 12, 22, 24; 82 ¶ 2].  As part of his agreement with Maverick Leasing, Plaintiff West agreed to bear all risk of loss to the Tractor-trailer and to procure physical damage insurance for it.  [Doc. 21-1 at 6, 82 ¶ 3].  Plaintiff West contracted with Maverick Transportation to facilitate the purchase of the insurance, including, specifically, property damage coverage issued by GWCC, known as the ICP00136 line of policies.  [Docs. 21-1 at 29, 82 ¶ 4]. Maverick Transportation facilitated the purchase of insurance for Plaintiff West's Tractor-trailer, including facilitating payment of all necessary premiums for coverage under the Policy, per the agreement.  [Doc. 21-1 at 29, 82 ¶ 5].

On January 29, 2023, the GWCC policy was in effect, and Plaintiff West's leased Tractor-trailer was listed on file with GWCC, with details as to Plaintiff West's name, address, the Tractor-trailer, insured value of the Tractor-trailer, and the loss payee.  [Docs. 4-1; 7 ¶¶ 12, 15, 22; 21-2; 82 ¶¶ 5-6].  The GWCC policy provided property damage coverage for "covered autos."  Specifically:

> This policy provides only those coverages where a charge is shown in
> the premium column below. Each of these coverages will apply only

to those 'autos' shown as covered 'autos' for a particular coverage by the entry of one or more of the symbols from the Covered Auto Section of the Physical Damage Coverage Form next to the name of the coverage.

[Docs. 4-1¶ 12, 82 ¶ 6].  The relevant symbol listed under "Covered Autos" is "59", which means:

59 = INDEPENDENT CONTRACTOR COMMERCIAL AUTOS. Only those trucks, tractors, and "trailers" on file with us that are leased by the "motor carrier" shown in the Declarations under this symbol [Maverick Transportation] and only while under a written lease agreement of 30 days or more. This includes only those 'autos' for which a premium has been paid for the coverages offered by the Policy and only while the lease is in force. If the lease is cancelled or expires then no coverage shall apply.

[Docs. 4-1¶¶ 13, 16; 82 ¶ 7].  On January 29, 2023, Plaintiff West's Tractor-trailer qualified as a covered "auto," in that: (1) it was listed on file with GWCC; (2) it was leased from him to Maverick Transportation; (3) it was under a written lease agreement of 30 days or more; (4) the lease was not cancelled or expired; and (5) GWCC had received a premium for the coverage offered by the Policy as to Plaintiff West's Tractor-trailer.  [Docs. 4-1¶¶ 13, 16, 82 ¶ 8; 82-1].

As an independent contractor for Maverick Transportation, Plaintiff West was insured under the GWCC policy, which described the named insured as the "Independent Contractors of Maverick Transportation LLC."  [Docs. 4-1, 82 ¶ 9, 82-1].  That group of named insureds was also referenced in the GWCC policy as "Maverick Transportation LLC Ind Cont" and as "Independent Contractors Leased

30

to Maverick." [*Id.*]  The broker maintained a current list of payments received for covered "autos" and certified that Plaintiff West was an independent contractor leased to Maverick.  [Docs. 21-2, 82 ¶ 10, 82-1].  Plaintiff West was listed as owner of the covered 2020 Freightliner, and Maverick Leasing was listed as the loss payee for that covered "auto." [Docs. 82 ¶ 10, 82-1 at 3].

Plaintiff West was involved in a motor vehicle accident, which caused damage to the Tractor-trailer, after which he submitted a claim under the GWCC policy.  [Docs. 4, 4-1, 4-2, 35 at 8-9, 82 ¶ 11].  GWCC honored Plaintiff West's claim under the GWCC policy by paying out over $120,000 to cover the property damage loss.  [Docs. 4, 4-2, 82 ¶ 11].  The payments were as follows:  $108,150.00 to "Dorian West and Maverick Leasing, LLC" as Loss Payee, by check dated 3/7/23, and $12,830.75 to "Maverick Transportation LLC Ind. Cont" by check dated 3/16/23.  [Docs. 4, 4-2, 82 ¶ 12].  The second check was cashed by one of the Maverick entities, and the proceeds were transferred to Plaintiff West.  [82 ¶ 12]

After his claim for policy benefits was honored, Plaintiff West sued for a return of his premiums in the 21st Judicial Circuit of Missouri.  [Docs. 38-1 at 15-16, 82 ¶ 13].  His initial allegations were that GWCC never certified a policy insuring Maverick Leasing, characterized as the titleholder of the Tractor-trailer, in exchange for these premiums.  [*Id.*].  He amended his claim on November 1, 2023, alleging that GWCC never provided Plaintiff West a policy in exchange for the

premiums paid to insure against losses to the Tractor-trailer.  [Docs. 82 ¶ 13, 82-2 at 2-3].  After GWCC provided proof that it had honored Plaintiff West's claim on the GWCC policy, Plaintiff West offered to settle in return for specific additional information to be provided in an affidavit by GWCC.  [Docs. 38-1 at 25, 27-28, 30-35; 82 ¶ 14].  GWCC agreed to the settlement and complied with it, but Plaintiff West did not dismiss the lawsuit until after GWW moved to enforce the settlement.  [Docs. 38-1 at 19-40, 48-49; 82 ¶ 14].  The dismissal was filed on February 4, 2024.  [Docs. 38-1 at 48-49, 82 ¶ 14]

Counsel for Plaintiff West, Daniel Finney, III, organized a new LLC named "Independent Contractors of Maverick Transportation LLC" under Missouri Law on February 2, 2024, improperly using Maverick's trademarks and trade names. [Docs. 13, 14 ¶¶ 2, 4 (admitting Doc. 7 at 10 ¶¶ 2, 4), 82 ¶¶ 15-16]; *see also Maverick USA, Inc. v. Independent Contractors of Maverick Transportation LLC d/b/a Maverick Transportation LLC Ind Cont*, Case No. 4:24-CV-00115, [Doc. 22], (E.D. Ark. May 23, 2024).  Mr. Finney then demanded a return of all premiums on behalf of the newly created LLC.  [Docs. 7-2, 7-3, 7-4, 82 ¶ 17].  Mr. Finney also demanded cancellation of the policies in the name Independent Contractors of Maverick Transportation LLC, despite acknowledging that it would harm non-party truckers: "[I]t's too bad for anyone who paid premiums for that policy."  [Docs. 38-1 at 55, 82 ¶ 18].

32

On February 4, 2024, Plaintiffs filed the instant lawsuit asserting that Plaintiff LLC is entitled to be treated as if it were the first named insured on the "S" Policy.  [Docs. 1, 1-1, 4, 4-1, 82 ¶ 19].  Notably, however, when directly faced with the allegation that Plaintiff LLC "alleges and claims that it is the named insured under the Policy," Plaintiffs denied that allegation.  [Docs. 13, 14 at 4 ¶ 46 (denying [Doc. 7 at 17 ¶ 46); 82 ¶ 20]. Plaintiff LLC and GWCC do not, and have never, had a contractual or other legal relationship.  [Doc. 82 ¶ 27].  Thus, Plaintiff LLC filed its claim despite knowing that it was not a party to the GWCC policy at issue, had no relationship with Maverick Transportation, and had not paid any premiums for coverage.  [Doc. 82 ¶ 20].  Although given an opportunity to explain that this lawsuit was not filed for an improper purpose, as discussed above, Mr. Finney has refused to do so.  [Docs. 32, 34, 38, 43, 55, 82 ¶ 29].

In this lawsuit, Plaintiffs seek an order that Plaintiff LLC be granted access to information about all named insureds under the GWCC policy.  [Doc. 4 at 3-4].  Additionally, they seek to have the GWCC policy declared void *ab initio.*  [Docs. 22 at 5, 82 ¶ 21] (specifically asking the court to "declare ICP#00136 [sic] void *ab initio*, [and to] order GWCC to stop collecting premiums to underwrite any policy naming as insured Independent Contractors of Maverick Transportation, LLC")).

The demands made by Mr. Finney on behalf of Plaintiffs include the following:

Please note that I am the registered agent for Independent Contractors of Maverick Transportation, LLC d/b/a Maverick Transportation LLC Ind Cont …

Please note that no one is authorized to act as an agent, nor to trade or conduct business under the above referenced names, other than Dorian West and myself.  Please make sure that [GWCC] has not issued any policies to the above referenced names without the permission of the two parties listed above.

[Docs. 7-2, 82 ¶ 22].

On February 5, 2024, the day after this lawsuit was filed in state court, Mr.

Finney sent an e-mail to GWCC's counsel stating:

[My] client is hereby providing [GWCC] notice of cancellation of all the policies with the first named insured "Independent Contractors of Maverick Transportation, LLC" or "Maverick Transportation Ind Cont."

[Docs. 7-3, 82 ¶ 23).  Additionally, Mr. Finney demanded a "refund of premiums"

on behalf of Plaintiff LLC:

Please make the refund check payable to the first named insured in the declarations: Independent contractors of Maverick Transportation, LLC d/b/a Maverick Transportation Ind Cont.

[Docs. 7-3, 82 ¶ 24].

On February 6, 2024, Mr. Finney demanded $65 million for a "global

release," stating:

I [Counsel for Plaintiffs] haven't found any evidence that the named insureds in policy #ICP00136S exist, other than the company for which I am legal counsel and registered agent. … It is in your client's best interest to meet my client's demand for $65 million in exchange for a global release, as soon as possible.

34

[Docs. 7-4, 82 ¶ 25].

On March 4, 2024, Mr. Finney served GWCC with a demand for $100 million, asserting, among other things, that:  GWCC wrote a bogus policy that is gibberish and offers no rights to any owner-operators; GWCC and its parent company face civil and criminal liability under RICO; a settlement would release all claims, including Plaintiff West's personal injury claim; and Plaintiffs' demand "will go up" after "we start getting rulings in our favor in the federal litigation." [Docs. 7-5, 82 ¶ 26].

Plaintiff West filed, but later retracted, or failed to complete the filing of, a lawsuit in St. Louis County, Missouri making claims of civil conspiracy against GWCC and their counsel.  [Docs. 58-2 at 2-12; 82 ¶ 31].  Throughout the litigation related to Plaintiff West, including this lawsuit, GWCC and its counsel have been subjected to hundreds of pages of written correspondence containing threats of criminal prosecution of GWCC and its counsel to leverage settlement in this matter by Mr. Finney.  [Doc. 7-4, 7-5, 79-1, 79-2, 82 ¶ 33].  Recent examples include:

> a. The attorneys who have argued ICP00136 has provided any coverage "are criminally liable for embezzlement of millions through wire fraud, as accessories, by perpetrating a fraud upon the Court, and the attorney client privilege between Clyde & Co. and GWCC and Old Republic is waived under the fraud exception act."
>
> b. Attorneys Worker, Murphy, Roman, and maybe Shuh (*sic*) are liable for tax fraud and "if the laws are enforced" will be put away for life.

c. [Attorneys Worker, Murphy, Roman, and Schuh] are looking at disbarment and prison time [as a result of their involvement in this case].

d. "GWCC can pay [West] for his injuries, without you all and GWCC's general counsel being disbarred and indicted. Or GWCC can pay him for his injuries with you and GWCC's general counsel disbarred and indicted…I don't want to see you all indicted and disbarred. But if you don't get my client the compensation to which he is entitled by law before the Court rules on whether Dorian was covered under ICP00136, I will."

[Docs. 79-1, 79-2, 82 ¶ 33].

## C. Discussion

### 1. Counterclaims I and II - Abuse of Process

The Court will not summarily grant GWCC's motion based solely on Plaintiffs' failure to respond to the motion. The Eighth Circuit has cautioned district courts that "[w]hen a motion would be dispositive of the merits of the cause if granted, courts should normally not treat a failure to respond to the motion as conclusive." *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1213 (8th Cir. 1997). Instead, the court should "proceed to examine those portions of the record properly before them and decide for themselves whether the motion is well taken." *Id.*

GWCC offers no legal authority establishing that it is entitled to judgment as a matter of law on the abuse of process counterclaims. [Doc. 81 at 4]. Instead, GWCC states that its "legal points and authorities" are set forth in its briefing on the motion for judgment on the pleadings, [Docs. 21, 23], and its motion for Rule

11 sanctions, [Doc. 53].   However, there is no discussion of the abuse of process counterclaims in those documents.   Under Rule 56, it is incumbent upon the party moving for judgment as a matter of law to discuss the applicable law and establish its right to relief under that law.   Further, Local Rule 4.01(A) provides: "Unless otherwise directed by the Court, the moving party shall file with each motion a memorandum in support of the motion, including any relevant argument and citations to any authorities on which the party relies."   E.D.Mo. L.R. 4.01(A).

It is within the Court's authority to deny a motion for failure to submit an adequate memorandum in support, including citation to legal authority.   *Cross v. MHM Corr. Servs., Inc.*, No. 4:11-CV-1544 FRB, 2012 WL 4092415, at *1 (E.D. Mo. Sept. 17, 2012) (citing *Smith v. Planned Parenthood of St. Louis Region*, 327 F.Supp.2d 1016, 1021 (E.D. Mo. 2004)); *see also Milligan v. City of Red Oak, Iowa*, 230 F.3d 355, 360 (8th Cir. 2000) (finding waiver where an issue was "mention[ed] in passing" with no "argument or legal authority" in support).   "The Court's role is to impartially interpret and apply the law when parties have a dispute."   *Id.*   "Before the dispute can be addressed, the issue must be properly framed for adjudication."   *Id.*   "It is not the role of the Court to assist a party in litigating their case."   *Id*.

Here, not only does GWCC fail to set forth the law applicable to an abuse of process claim, but it also fails to offer any legal authority under which an

attorney's actions may be imputed to the client. The majority of undisputed facts offered in support of the abuse of process claims appear to be attributable to Mr. Finney's conduct, not that of his clients. Because GWCC has not provided any legal basis or authority in support of the abuse of process counterclaims, the motion for summary judgment will be denied as to Counterclaims I and II.

### 2. Counterclaims III and IV – Declaratory Judgment

GWCC seeks a declaration under 28 U.S.C. § 2201 and § 2202 that Plaintiff LLC is not a named insured and has no rights under the GWCC policy (Counterclaim III) and that GWCC has satisfied its obligations to West for his property damage claim (Counterclaim IV). The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction...any court of the United States...may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.§ 2201(a).

The interpretation of an insurance policy is a question of law. *BITCO Gen. Ins. Corp. v. Smith*, 89 F.4th 643, 646 (8th Cir. 2023); *Allstate Ins. Co. v. Burrough*, 120 F.3d 834 (8th Cir. 1997); *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991). With regard to Plaintiff LLC, the undisputed facts show that it is not a party to the GWCC policy at issue and did not pay premiums to GWCC. As for Plaintiff West, the undisputed facts show that

38

GWCC paid his property damage claim under the GWCC policy.  Based on these facts, Plaintiff LLC has no rights under the GWCC policy and GWCC has fulfilled its obligation to Plaintiff West under the GWCC policy.  The Court finds GWCC has established that it is entitled to judgment as a matter of law in its favor as to Counts III and IV of its counterclaim.

Based on the foregoing, the Court finds and declares that:

(1) Plaintiff LLC is not a named insured under GWCC Policy No. ICP00136S and has no rights under that policy.

(2) GWCC has no contractual or other legal relationship with Plaintiff LLC.

(3) Plaintiff West was insured for property damage under GWCC Policy No. ICP00136S with regard to a 2020 Freightliner Cascadia Tractor leased from Maverick Leasing, LLC.

(4) GWCC fulfilled its obligations under GWCC Policy No. ICP00136S with regard to Plaintiff West's property damage claim on the 2020 Freightliner Cascadia Tractor leased from Maverick Leasing, LLC.

GWCC also requests injunctive relief prohibiting Plaintiff LLC and Mr. Finney from filing suit against GWCC without leave of court.  Such a drastic remedy must be used sparingly and must be consistent with constitutional guarantees of due process of law and access to the courts.  Here, GWCC makes this request without any argument or legal authority on the propriety of an injunction limiting access to the courts and, therefore, the request is denied.  To the extent GWCC seeks other declaratory relief, the requests are not properly before the Court and will not be addressed.  This includes the request for a declaration

that the GWCC policy is valid as to other individuals who are not parties to this action and requests related to other GWCC insurance policies involving independent contractors working for Maverick.

As the prevailing party, GWCC seeks its attorneys' fees, costs, and expenses.  There is no provision for the award of attorneys' fees and expenses under the Federal Declaratory Judgment Act.  That said, the Eight Circuit has noted that "attorneys' fees may be awarded under 28 U.S.C. § 2202 where such an award is authorized by applicable state law for comparable actions." *Am. Fam. Ins. Co. v. Dewald*, 597 F.2d 1148, 1151 (8th Cir. 1979).  Under Missouri law, a court may award attorneys' fees as costs in a declaratory judgment under "special circumstances," which is narrowly construed.  *Smith v. City of St. Louis*, 395 S.W.3d 20, 26 (Mo. banc 2013).

Here, GWCC submitted no legal argument in support of an award of fees, let alone a showing of special circumstances that would warrant this relief.  Further, for evidentiary support, GWCC submitted the declaration of its counsel, Siobhan M. Murphy, in which he attests that his firm has sent invoices "related to this litigation" to GWCC totaling $210.980.00 as of January 15, 2025.  [Doc. 83-3 at 2].  However, no invoices or itemized bills with hours worked and the attorneys' hourly rates were attached to the declaration.  The Court finds GWCC's

40

submission is inadequate to support an award of attorneys' fees and costs. *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 93 F.4th 408, 420 (8th Cir. 2024).

For the reasons stated above, GWCC's motion for summary judgment will be granted as to Counterclaims III and IV, and declaratory judgment will be entered in favor of GWCC.  In all other respects, the motion is denied.

### IV.   <u>Motion for Protective Order</u>

GWCC seeks an order of protection requiring Mr. Finney to cease and desist further communication and limit his correspondence with GWCC and its counsel to official filings with this Court until the discovery stay is lifted.  [Doc. 79 at 4-5].  Mr. Finney's actions, as outlined in GWCC's motion and described *supra*, are hostile and harassing and do not serve to advance this case.  That said, GWCC seeks an order of protection under Fed. R. Civ. P. 26(c) which pertains to discovery.  Because Rule 26(c) does not support an order of protection under the circumstances presented here, the motion will be denied.

That said, under 28 U.S.C. § 1927, the Court has the power to require an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *See Caranchini*, 97 F.4th at 1103. Mr. Finney is advised that the communications outlined in GWCC's motion fall

within this category and will be considered by the Court when determining appropriate sanctions in this matter.

All other relief requested by GWCC in its motion for a protective is denied at this time, and GWCC's motion for hearing on its motion for protective order is denied as moot. [Docs. 78 and 104]

## V.  **Other Pending Motions**

Plaintiffs' Motion for Leave to File Apology to the Court, [Doc. 40], will be denied.  Leave is not required to make an apology to the Court.

Plaintiffs' Motion for Leave to File Supplement Response to Show Cause, [Doc. 88], also will be denied.  Plaintiffs filed a number a responses to the show cause orders, *see* [Docs. 32, 34, 38, and 48], and in their current motion and memorandum in support, Plaintiffs fail to explain why another response is warranted.  Moreover, in the motion to supplement and memorandum in support, Plaintiffs fail to address the substantive issues raised in the show cause orders.

As for Plaintiffs' Motion to Disqualify Counsel, [Doc. 46], Plaintiffs have failed to establish that GWCC's attorneys have engaged in misconduct, let alone misconduct that would warrant disqualification.  *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (motions to disqualify opposing counsel are subject to abuse by opposing counsel, they are subjected to

particularly strict judicial scrutiny.") (quoted case omitted).  Plaintiffs' motion is denied without merit.

As for the parties' motions that related to case management, Defendant's Motion to Modify Case Management Order, [Doc. 63], and Plaintiffs' Motion to Lift Discovery Stay, [Doc. 76], will be denied at this time.  The Court will take up the issue of scheduling following the hearing on sanctions.

Accordingly,

**IT IS HEREBY ORDERED** that consistent with the terms of this Opinion, Memorandum and Order, Plaintiffs' Petition for Declaratory Judgment is **DISMISSED with prejudice** pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with Court orders.

**IT IS FURTHER ORDERED** that Defendant's Motion for Sanctions under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and this Court's inherent authority is **GRANTED** as set forth herein.  [Doc. 53].  A ruling on the appropriate sanction(s) is **DEFERRED**, and a hearing will be set by separate order.

**IT IS FURTHER ORDERED** that consistent with the terms of this Opinion, Memorandum and Order, Defendant's Motion for Summary Judgment, [Doc. 80], is **GRANTED** as to claims for declaratory judgment in Counts III and IV of Defendant's Counterclaim and **DENIED as moot** as to Plaintiffs' Petition.  In all other respects, Defendant's Motion for Summary Judgment is **DENIED.**

43

**IT IS FURTHER ORDERED** that Defendant's Motion for Judgment on the Pleadings, [Doc. 20], is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Apology to the Court, [Doc. 40], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Disqualify Counsel, [Doc. 46], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Modify Case Management Order, [Doc. 63], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Lift Discovery Stay, [Doc. 76], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Protective Order, [Doc. 78], is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Supplement Response to Show Cause, [Doc. 88], is **DENIED**.

**IT IS FINALLY ORDERED** that Defendant's Motion for Hearing on its Motion for Protective Order, [Doc. 104] is **DENIED as moot.**

An order of dismissal and partial judgment will accompany this Opinion, Memorandum and Order.

Dated this 20th day of March, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE